144168 Stephen M. Hill v. Homeward Residential Inc. Oral argument not to exceed 15 minutes per side. Mr. Doucette for the Plaintiff's Appellant. Good morning, Your Honor. I would like to request a five-minute rebuttal to be reserved for me. All right. My name is Troy Doucette. I represent the Appellant, Mr. Stephen Hill, in this case. If it pleases the Court, my client fell on hard times. He got bit by a wolf spider, nearly lost an arm. He was out of work for a couple of months. And during that time period, he fell behind on his mortgage. After that period, he got back on his feet, got better. He did what we want people to do, which is to reach out to his mortgage company to find a resolution to get back on track with his mortgage. To that end, he filled out multiple loan modifications and worked in good faith over a period of time to get something done so he can save his house. His good faith efforts yielded him not a loan modification. In fact, he never got one. It actually yielded him a foreclosure. And his cell phone loaded into an auto-dialing robo-dialer and called 487 times. That 487, to put that in perspective, if each call was one second of ringing, we'd be sitting here for over eight minutes of his telephone ringing. This puts enormous stress on a family, on an individual, on, quite frankly, society. That it's become such an issue, robo-signing became such an issue, that Congress came out and passed a law that prohibited it from occurring. Congress did not prohibit and did not limit companies' abilities to contact their borrowers, contact their customers, even contact individuals who are not customers, and talk with them. There's absolutely nothing— Didn't the jury find they didn't use a robo-caller? No, the jury found that they did use a robo-caller. That was actually a specific interrogatory. Yes, the issue with the jury was, the second interrogatory was, did he give a prior express consent? And the issue that we have with that is that the jury instructions, it was pretty clear that was the way that was going to happen because of the way that was worded. The prior express consent piece of it is really what the nuts and bolts of the dispute between the two parties. I think that Homeward essentially wants the court to find an implied consent, not even an express, but rather just an implied consent that when somebody gives a phone number on a mortgage application, Homeward doesn't have any obligation to expressly tell them what they're going to be used for, that they're going to be loaded in an auto-dialer, that that's sufficient just to begin harassing somebody nonstop for months on end. What did the jury find about that? That's express consent. Well, it was the jury instructions is the issue. So the jury found that consent was provided. The jury instructions said that if Mr. Hill provided his telephone number on, I'm paraphrasing here, but if Mr. Hill provided his telephone number on any document, that was sufficient to find that he provided consent. That language is problematic because the FCC has a rule that had a ruling. Actually, the Second Circuit asked the FCC on a similar case for ruling on this particular similar issue about giving consent. And the FCC, in a 2008 order as well as in NIGRO versus Mercantile, says if you're going to get this consent, you have to have given it at the time of the initial transaction. The words in the actual decision or the opinion to the Second Circuit is that the client provided his telephone number to National Grid after the debtor had incurred that debt and, therefore, that no consent was provided. So what we had was a jury instruction that said just giving a number is sufficient. And our position is let's take a step back here. First, we can rely on the FCC reg or opinion. I'm curious about your reliance on the Second Circuit case because in that case, as I understand it, the party being called didn't give the number in connection with an existing debt. They were a third party. Well, that is true, yes. So the facts in that case where you're really plucking out stray language doesn't have anything to do with the facts in this case. It doesn't say that you have to give a number in connection with the initial creation of the debt, which is the whole basis of your argument here. It's not in the act. It's not in the FCC rulings. And it's not in this Second Circuit case. So what do you have to rely upon? Well, the FCC opinion to the Second Circuit, the FCC is saying, page 8 at the bottom of its decision, that the number was provided after the debt was incurred. So I'm using the issue is, and I think the FCC is. That's not the basis of the ruling. The 2008 ruling says that, yeah, there's two lines to the sentence. We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor and that such a number was provided during the transaction that resulted in the debt owed. So there's a two-function piece in the 2008 FCC order. If we take out the second sentence, we don't need the second sentence if all you have to do is just give the phone number. Then the first part of the sentence is sufficient. It's deemed to be granted only if wireless number was provided by the consumer to the creditor. We stop reading there, and that's what this court did. That's what this lower court did in the jury instructions. We said, wait a second, Judge. Let's add the second part of that sentence that the FCC order says, which is, and that such a number was provided during the transaction that resulted in the debt owed. The resulting obligation. Do you have anything other than the Second Circuit case that deals with other facts that support your injection of this initial debt concept? Well, I think we do cite to some cases within our decision. There's a lot of decisions on this point at the lower court levels. I'm not aware beyond the Second Circuit that we've got anything other than the FCC saying what prior express consent is. I would take a step back, though. Let's skip over the FCC for just a second and just look at prior express consent. I mean, we've got prior, but we have also express, and we have consent. What does express mean? All the documentation that my client provided, which, by the way, was for the purposes of getting a loan modification. He was happy to talk with people over the telephone about a loan mod because he wanted to save his house. The idea here is that there has to be something more than just putting a phone number down on a form. There has to be an express. There has to be consent, and there has to be express. They should have said to him, hey, we're going to use your number to robocall you. We're going to put your number in an automated dialing machine. We're going to call you using that machine. They didn't do that. What's the point of having the word express if somebody's not going to convey that? I will say the FCC orders now that have been changed since then, which we talk about in our brief, are implicitly clear. I mean, if a telemarketer wants to call somebody, they have to have in writing this consent that says, not only in writing, but the actual language saying, we're going to robocall you, and you don't have to enter into this. The FCC also says now that even if it's your current client, you still have to inform them of this, and you have to provide an opportunity for them to say no. You just don't have to do it in writing. You can do it orally. They never did that either. I'll also say, Your Honors, that this is not my client's obligation to prove non-consent. This is an affirmative defense that it is their obligation to prove. You gave him his cell phone number, your send, but not for robocalls, right? That's exactly right, yes. He didn't have a landline anymore, did he? That's correct, yes. But there is no obligation for my client to withdraw consent when they haven't even provided his consent, and it is their obligation to prove. But besides all that, my client's okay with getting phone calls by a human being. They can dial his phone number. They can call him up. What happens in real life is that you get a debtor who goes through a difficult time and is just hounded. This is not a mechanism to call him up on the phone and help him out. That's why he filled out ten different forms with his phone number on it. I mean, he filled out IRS forms I don't know how many times. This is not about them trying to. Would you concede that the FCC regulations seem to confine the prior express consent with respect to automated calls to telemarketers rather than ordinary consumers such as your client? No, Your Honor. No, no, no. No, it's quite broad, and even if we go back from the beginning, but definitely the 2008 lengthy opinion in order is well beyond just telemarketers. It does deal with, and I think the reason why it does is that, you know, it seems to me that this is because there is such a problem with robocalls. I mean, 487 calls. Who's going to consent to that? I mean, that's one second apiece is eight minutes, let alone, you know, sit there and have your phone ring all day every, you know, that's just. We don't necessarily agree with it. It's just trying to discern what's required under the statute and regulations. We've got this 23 FCC read at 564 and 565 that your brief addresses at page 8 and 9 to the contrary, and it seems there is an argument to be made that the FCC has only prohibited this, well, not just with respect to telemarketers, but also hospitals, health care facilities, elderly homes, and similar establishments. But go ahead with your argument. We don't have a, certainly we don't have a clear case in this circuit on this issue, and the other circuits are not clearly supportive of your argument or maybe not supportive at all. But go ahead with your argument. Oh, you're out of time. Unless you want to use some of your rebuttal time. Just to answer your question, I'd appreciate it. All right. Go ahead. We're dealing with the original regulation. As of today, the most recent 2015 order that came out, and even memory serves 2012, is incredibly clear that this applies to telemarketers and customers of institutions. If this court were to find that the statute doesn't apply to customers, it will eviscerate the entire code as it applies right now to businesses. I know we're dealing with a specific time period of calls, 2008, 2009, 2010 calls, but I would encourage the court to look at it as applying to all of it. All right. You'll have your full five minutes. Thank you. Good morning. Good morning, Your Honors. I'm pleased to court. My name is Kimberly Rivera, and I represent the Appali Homeward Residential. The facts in this case really aren't disputed. The appellant, Mr. Hill, got a loan in 2003. On January 3, 2008, he called his loan servicer and gave them his cell phone number in place of his home number. In 2010, he specifically instructed Homeward to use his cell phone number rather than his work number, leaving his cell phone number as the only contact number on his account. Over the next few years, Mr. Hill completed numerous documents in an effort to obtain a loan modification and repeatedly provided his cell phone number, even identifying it as his home phone number. Mr. Hill at no time ever asked Homeward to stop calling his cell phone, but when he was ultimately declined for a loan modification because he continually did not provide the necessary documents in a timely manner, several months later he filed the underlying action claiming that he'd been called on his cell phone without his permission. Ms. Rivera, it seems to me it's a little hard to follow these pleadings because there's a lot of language about appealing a summary judgment, which you can't do after you've already submitted your case to the jury. So if we just ignore all the language about appealing a summary judgment denial, his argument seems to come down to two things, as I understand it. First is that in order to be able to use this equipment that you used, and I'm going to ignore whether the numbers were manually loaded or whether they weren't manually loaded, you have to have given express consent for an auto-dialed call as opposed to express consent to just simply call that number. So could you speak to that for just a moment, please? That addresses Mr. Hill's third argument in this court, which is that the trial court erred in its instruction to the jury regarding what constitutes prior express consent. The Southern District of Ohio has held that to prevail on a TCPA claim, Mr. Hill had to show that there was a call made to his cell phone using an automatic telephone dialing system or an artificial or pre-recorded voice without his prior express consent. Automatic telephone dialing system is very specifically defined by the TCPA as equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. Mr. Hill failed to produce any evidence whatsoever that Homeward had ever used an automatic telephone dialing system as defined by the TCPA. The counsel just said that the jury found that they had used it. Is that not correct? The jury answered the first interrogatory, which incorporated or pre-recorded voice. Mr. Hill testified that he'd gotten some recordings. So it was our understanding that the jury found that there had been a pre-recorded voice. But the jury never said expressly, and I don't believe that was the jury's holding, that there was an automatic telephone dialing system. Let me ask you this. I don't mean to interrupt your response to Judge McKee, but just one point on what you just said. You said he didn't provide evidence on whether it was an automated system. When he alleged that in his complaint, did you deny that it was an automated system? Yes, we did. We did and we continued to because the testimony at deposition did not comply. The system that they used did not fall within the definition of the statute. With regard to consent, Homeward had presented substantial evidence, including Mr. Hill's own admissions, deposition testimony, and signed documents that he had repeatedly provided his cell phone number and instructed Homeward to use it. And the FCC is required by the TCPA to set forth regulations prescribing its provisions, and the FCC's regulations are binding. The FCC held in 1992 that persons who knowingly release their phone numbers have, in effect, given their invitation or permission to be called at the number which they have given absent instructions to the contrary. If I give you my phone number, you have my permission to call my phone number. And then in 2008, the FCC clarified that ruling in the debtor-creditor concept specifically and expanded it and said auto-dialed and prerecorded message calls, and this is a quote, to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the prior expressed consent of the called party. There's no dispute here that these calls were made in connection with Mr. Hill's existing debt, and that is all that's required by the FCC. Now the FCC, in response, I believe, Judge Clay, to your question, the FCC has different requirements for telemarketing. They now specifically do require that the consent be in writing, but the FCC has always made a distinction between telemarketing and debtor-creditor relationships, and the FCC has expressly decided not to make that requirement for the debtor-creditor relationship. I guess the issue is what is the scope of the consent that's being provided in terms of whether the robo-calls are included within that. Are we bound by the FCC's definition of prior expressed consent? Do you have any cases that say that we're bound by the FCC in that regard? Yes, actually. The district court was bound, and this court is as well, under the Hobbs Act. There's an appeal process when the FCC gives a ruling, and that's got a six-month time period to it. And once that period's gone, the courts are bound by the FCC's rulings, whether they agree with them or not. In terms of the time or in terms of the substance and content of the ruling by the FCC? In terms of the content of the ruling. I think what you're missing isn't the question of whether the rule is binding. If we're trying to interpret what they meant in a ruling, then don't we get to either Chevron or Skidmore deference on that particular point? I think if there was some ambiguity, that would be the case. But the FCC's ruling is clear. I mean, it's stated in what would be the equivalent of a court's syllabus law at the beginning of its ruling. The language that I quoted is right there. And the FCC's focus has always been on voluntariness, the voluntariness of giving your phone number. And giving your phone number during the course of a debtor-creditor relationship is no less voluntary than giving your phone number at the beginning of the relationship, as Mr. Hill would like to argue that it has to be at the beginning. In addition, that distinction is illogical because, you know,  courts that have considered it with the exception, I think, of the one case that they try to rely on, to the extent that it provides any guidance at all, courts have found, and the district court found, that the distinction between giving it at the origination or giving it later is illogical and incorrect. So in the first argument that he's making, your response is, as long as they give consent to call the cell phone number, that consent doesn't have to specifically say, and use a robo-dialer or an automatic dialer. It doesn't. Give the number and you say, call me, that's good enough, right? That's right. Now, apparently, I would say, recognizing that, he then goes on to say, yes, but that's only the case if you gave that consent in connection with the initial part of the incurring of the debt, not during modification or subsequent to the debt being initially incurred. And that's where he gets into the Second Circuit case. How do you respond to that? For two reasons, that's wrong. First, it contradicts FCC's actual holding that says that if you give your phone number in connection with an existing debt, this was a 30-year mortgage loan, it's still existing, in connection with an existing debt and its prior expressed consent. The second argument is the distinction is illogical because the FCC's focus has always been on voluntariness. If I give it to you now, it's voluntary. If I give it to you then, it's voluntary. It has nothing to do with the point at which it occurs during a 30-year long relationship. It's still in connection with an existing debt. I think the FCC's holding was quite clear. The district court quoted it exactly in its instruction to the jury, which I believe is exactly what it should have done. And so I believe that Mr. Hill's argument is correct. But there's got to be a reason why the lenders don't put in there that, based upon your providing this phone number, you could, under certain circumstances, be subject to robocalls, automated calling systems to collect any debt incurred pursuant to this loan. And presumably, the reason that they don't put that in there is that some consumers would object if that were in there. So, I mean, the issue really sort of goes to the scope of the consent. What is really being agreed to by providing the phone number? The FCC doesn't even require this consent to be in writing. And as you recall, Mr. Hill. Well, that's why I asked you to comment on whether we were bound by the FCC in all this. There may be a reason to visit that issue. The creditor has a right to make reasonable efforts to collect a debt. The creditor also has a right to try to reach out to a borrower who's trying to get a loan modification but isn't answering his phone. You're not reaching out. It's unbridled harassment is what these robocalls are. I will point out that Mr. Doucette's statement of 487 phone calls is not in the record anywhere. That's completely unsupported. There's no support for that at all. That's what he thinks based on documents he looked at that were not explained to the jury. There was no testimony given on them. It doesn't say who called, if it was a person who called, if it was an automatic dialer who called, if it was a recorded voice, nothing. There's no evidence of 487 calls. Are you saying that during the trial there was no evidence about how many robocalls? There was none. There was no evidence of how many calls. There was no evidence of any robocalls. Mr. Hill said he got some recordings. But there was no evidence that an automatic telephone dialing system was ever used. Evidence wasn't presented. Well, I mean, he couldn't testify with his own personal knowledge that all these, if there was a flood of calls, that they were being made from an automated system because he would have had to be operating the system to know that. But he could surmise based upon the number of calls and the frequency, whether an automatic dialer was involved. He could reasonably infer that. He couldn't. He couldn't because, first of all, he was applying for a loan modification, and they were trying to reach him because he wasn't providing the documents they needed, and he wasn't returning their calls, and he wasn't answering his phone, and he admits that. So Homeward had to call him more rather than less because they were trying to reach him regarding his own loan modification application, and he wouldn't talk to them. So they had to keep calling him, and they kept calling him at the number that he instructed them to call. That's the number he gave them. That's the number that he told them to call. That's the number that he wanted them to call him. When he answered, what did he get? Somebody dunning him to pay the debt or somebody offering him? I mean, it may have been a mixture of both. We don't know because, again, there was no evidence, which leads me briefly to the second argument that Mr. Hill makes. What do you mean you don't know? It's your client who was making the calls. Mr. Hill's second argument is that Homeward should have been forced to provide him with a witness at trial. Mr. Hill repeatedly failed to properly subpoena a witness at trial, so there was no testimony from Homeward at trial. That's why none of this testimony existed. I think the testimony from Homeward probably would have helped our case rather than hurt it, but after Mr. Hill's case in chief, it was not necessary for us to call a witness, and Mr. Hill didn't call a witness. So some of this evidence, if he wanted it in, he could have tried to get it in through a Homeward witness, but he didn't have a Homeward witness because he failed repeatedly. Were there any depositions, interrogatories, requests for admission? Yes, there was, and part of the deposition testimony was read into the record, and once again it didn't support their position of an automatic telephone dialing system or a certain number of telephone calls. I think where we're getting a little hung up on these questions is you're saying that you don't know. It isn't a question of whether your client knows what they did or didn't do here. Your point, as I understand it, is not in the record. Absolutely. I mean, I assume that had he called the witness properly or asked the right questions in discovery, you could have told him how many calls your record show you made and the manner in which they were made, right? You could have done that. Exactly. He didn't ask. That's right. So in his second argument, he claims that the trial court abused its discretion by not forcing Homeward to produce a witness for him, but Mr. Hill failed to subpoena one under Civil Rule 45. His so-called Rule 45 subpoenas failed in virtually every way to comply with Rule 45, and they were nothing more than Rule 30b-6 belated efforts to seek discovery on topics that he had never explored during discovery. So we objected. The trial court sustained our objections. He filed a motion for a Rule 30b-6 notice of trial deposition to take place on the date, time, and place the trial was scheduled to begin for someone to testify on topics that, again, he'd never explored during discovery. We again objected. The trial court, again, sustained our objections. And on the first day of trial, the trial court recalled a conversation had at the final pretrial nearly two months earlier where Mr. Hill's counsel had been told in the presence of the court that if he wanted a Homeward witness, he'd have to subpoena one, and he didn't do it. So the trial court concluded that Mr. Hill had had more than reasonable notice to do it. He didn't, and the trial court did not abuse its discretion in failing to do for Mr. Hill what he could have done for himself, but did not. Where's the company's office that he was trying to get somebody from? There were several mergers that took place, so it's got to go. What time of driving was it? Was it within 100 miles of the court? It was in Florida, somewhere in Florida. Pardon me? It was in Florida. It wasn't within 100 miles of the court then? No. They couldn't subpoena anybody. Well, there are provisions to allow someone outside the geographical limitations to testify at trial, but Mr. Hill didn't follow any of those provisions. So his so-called subpoenas exceeded the geographical limitation of Rule 45, and the trial court had no choice but to quash those subpoenas. So unless there are more questions, Homer believes that Mr. Hill's arguments fail and should be overruled and respectfully requests that the district court's decisions be affirmed. Thank you. Your Honor, there's a handful of things to go through, but the way that the jury found that the robocalls were made was because we had a deposition transcript that we submitted where their own witness, there's 176 calls that were made by this Prairie system. She says, I think these are exact words, I know that Prairie is an auto-dialer collection call. So she goes through and we go through at least 176 examples where their own witness is calling it an auto-dialer. Then lo and behold, at trial, they no longer want it to fall under the definition of auto-dialer when we ask a handful of questions that make it to the jury in the deposition and the transcript. I think that the Rule 45, the way that it's just been redrafted, poses a significant problem. I mean, the defendant did business in Ohio, had a loan in Ohio, had filed foreclosure against my client in Ohio. It was subject to the jurisdiction of the court in Ohio, Southern District. And yet when trial comes around, I don't have a mechanism under Rule 45 to call a corporate representative of the defendant to appear at trial. That's ultimately what was going back and forth. And we can argue about our jurisdiction limitations as far as space is concerned, but their point number one is that I cannot get a corporate representative at all under the civil rules to trial. It's rather interesting. They could have taken their deposition before trial and read it. That's 100 miles from the court. Well, that's what we ultimately had to end up with. But how is that compared to an individual? Where exactly do we get the authority to rewrite Rule 45? Well, I don't think you're rewriting it. I think you're saying a corporation is a person. Under Rule 45, a person is able to be a civil court. Has any court in the United States ever done what you want us to do with Rule 45? I think that Rule 45 is now, I think it's the changes that are at issue here, but I know. Is that a yes or a no? Not that I'm aware of. You see no irony here in the manner in which you want us to rewrite Rule 45 by ignoring what the Rule 45 says with your argument about what some could say is a hyper-technical reading of the Telephone Act itself? Why would corporations get special treatment? I mean, I can subpoena an individual person to show up. I'm not asking for anything. Not if it's 100 miles. Well, you know. Or in the state, I believe. Well, maybe. They're just things you have to do during discovery. You didn't do them. You don't get a do-over at the trial. Well, you know, can we bring in the person to Southern Florida? I think we were willing to do that if we needed to do a video deposition or video trial. Well, if you were willing to do it, why didn't you do it? They told you who you had to do it. We weren't told where the corporate headquarters were. We told somebody who was going to initially appear. Time out. You don't know enough in discovery to ask where the corporate headquarters is and who the people are that perform certain roles? Isn't that the essence of discovery? As part of our disclosures, we're provided a name of somebody who's going to appear as a corporate representative. That changed. Last minute, it changed. I don't know. If she's saying it changed a handful of times, that's, I suppose, an issue that it is what it is. I think litigants should have the ability, if somebody's going to be subject to the jurisdiction, to have the ability to bring somebody in there to the court in order to— Well, that's what you think, but that's not the rule. Fair enough. All right, all right. So going back for a second here on the— clearly there's deposition testimony, but the issue is, quite frankly, with the jury instructions, that beyond the issue of consent, that the jury instructions, the way they're provided, I've only got one half of the piece of the pie, that the court's just saying, and this goes to scope, and I think the court is right to point out scope as the issue here, that the jury should have had something limiting scope. Our initial, our proposed jury instructions did have scope, but those were taken out and we just left with what we had. All right. I just close by, again, reiterating prior express consent, that's the term used when it comes down to scope, that that's what is within prior express consent. There has to be some kind of informed consent. There's an express, it says express, it's not implied that the FCC, you know, is pretty clear that there needed to be a little bit more here. So thank you, Your Honors. Thank you, and the case is submitted.